T.C. Memo. 2011-285

UNITED STATES TAX COURT

CYNTHIA BUSCHE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16043-10L.                 Filed December 7, 2011.

R issued to P a notice of proposed levy, and P
timely requested a hearing under I.R.C. sec. 6330.  In
that request P asked for a face-to-face hearing and
indicated that she desired an installment agreement or
an offer-in-compromise, but P never made a concrete
proposal of either.  P did not submit current evidence
of proper tax withholding.  As a result, R did not
offer a face-to-face conference as P had requested.  P
refused to participate in a telephone collection due
process conference, and R issued to P a final notice of
determination that R would sustain the proposed levy.
P appealed that determination to this Court, arguing
that she was entitled to a face-to-face hearing.  R
moved for summary judgment, and P opposed R's motion.

<u>Held</u>:  R's Office of Appeals did not abuse its
discretion in sustaining the proposed levy when (1) P
generally requested an installment agreement but
disregarded Appeals' multiple requests for a concrete
proposal, and (2) P failed to supply information as to

her current compliance with tax withholding
obligations.


Cynthia Busche, pro se.

David M. McCallum, for respondent.


MEMORANDUM OPINION


GUSTAFSON, Judge:  This case is an appeal by petitioner
Cynthia Busche, pursuant to section 6330(d),[1] asking this Court
to review the notice of determination issued by the Office of
Appeals ("Appeals") of the Internal Revenue Service ("IRS")
sustaining a proposed levy to collect Ms. Busche's unpaid Federal
income tax for the year 2008.  The case is currently before the
Court on respondent's motion for summary judgment filed
August 18, 2011.  The principal issue for decision is whether
Appeals abused its discretion by denying Ms. Busche a face-to-
face hearing.  For the reasons explained below, we will grant
respondent's motion.

_____

[1]Except as otherwise noted, all section references are to
the Internal Revenue Code (26 U.S.C.), and all Rule references
are to the Tax Court Rules of Practice and Procedure.

## Background

The following facts are based on the documents in the record of the IRS's hearing held pursuant to section 6330(b) and (c). As is discussed below, Ms. Busche did not raise any genuine issue as to these facts.

### Ms. Busche's self-reported 2008 liability

On April 15, 2009, petitioner Cynthia Busche timely filed a Form 1040, "U.S. Individual Income Tax Return", for the year 2008, on which she reported a total tax liability of $11,342, withholding credits of $4,769, and an unpaid balance due of $6,573.  That is, the amounts of tax that the IRS proposes to collect by levy are not the result of a deficiency determination by the IRS but rather are as reported by Ms. Busche herself.

### The IRS's initial attempts at collection

The IRS assessed the tax reported by Ms. Busche; and, because the balance due was unpaid, the IRS sent her in May and June 2009 notices of balance due.  When Ms. Busche did not pay the balance due, the IRS sent her a "Final Notice of Intent to Levy and Notice of Your Right to a Hearing" dated January 4, 2010.

### Ms. Busche's request for a CDP hearing

In response to that notice, Ms. Busche submitted to the IRS, on January 20, 2010, a Form 12153, "Request for a Collection Due

Process or Equivalent Hearing".[2]  The form permits a taxpayer to indicate the nature of her collection due process ("CDP") hearing request by checking boxes selectively, but Ms. Busche checked boxes almost indiscriminately.  That is, she checked not only the "Proposed Levy or Actual Levy" box (which was appropriate, given her receipt of a notice of proposed levy) but also the "Filed Notice of Federal Tax Lien" box (as well as other lien-related boxes, i.e., "Subordination", "Discharge", and "Withdrawal"), even though our record shows no lien filing, the IRS alleges that none has ever been made, and Ms. Busche makes no allegation that she received a notice of lien.  Ms. Busche checked the boxes indicating that she desired both an "Installment Agreement" and an "Offer in Compromise", though she later acknowledged that "an Offer in Compromise * * * does not apply in this situation."

Ms. Busche submitted her Form 12153 under a cover letter[3] that included the following:

_____

[2]Ms. Busche's mailing included two similar Forms 12153, one of which, dated "11-16-09", pertained to 2008 and is at issue here.  Even though it pre-dated the final notice of levy, the IRS treated it as timely.  The form refers to "Attached Sheets", but those sheets do not appear in our record (despite the Court's invitation to Ms. Busche, described below).  Ms. Busche's other Form 12153 (dated "8/24/2009") pertains to years other than 2008 and is not at issue here.

[3]The cover letter purports to be dated January 19, 2009, but it is clear, both from dates within the letter and from an accompanying affidavit, that the letter was actually composed in January 2010.

On June 11, 2009, by registered mail #RA513114084US, the INTERNAL REVENUE SERVICE, AUSTIN, TX received payment, and authority to process payment with IRS form 56,[4] to discharge the 2008 IRS Debt of CYNTHIA L BUSCHE. I have no evidence to the contrary. Debt is discharged in full under UCC 3-603.[5] I have no evidence to the contrary.

---

[4]Ms. Busche's reference to "Form 56" apparently reflects the frivolous contention that

> The federal government * * * has tricked the populace into becoming U.S. citizens by entering into 'contracts' embodied in such documents as birth certificates and social security cards * * * [; that] the government holds the profits in secret, individual trust accounts, one for each citizen * * * [; and that one] who learns of and is able to implement the remedy, can supposedly use the debt owed to her by the government to discharge her debts to third parties with Bills of Exchange that are drawn on her trust account * * *.

Bryant v. Washington Mut. Bank, 524 F. Supp. 2d 753, 758-759 (W.D. Va. 2007). One can supposedly invoke this remedy for tax purposes by filing "an IRS Form 56 ('Notice Concerning Fiduciary Relationship')--requesting that the Secretary remit to him [an amount] * * * from his trust account". Gravatt v. United States, ___ Fed. Cl. ___ (Sept. 27, 2011).

[5]Ms. Busche apparently invoked "UCC 3-603" on the grounds that "the Uniform Commercial Code (UCC) provides the means for a person to implement" the remedy of obtaining his secret trust funds from the Government, Bryant v. Washington Mut. Bank, 524 F. Supp. 2d at 759. Ms. Busche's home State's version of the cited provision--N.C. Gen. Stat. sec. 25-3-603(b) (2009)--provides: "If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument and the tender is refused, there is discharge". However,

> the United States Government, as the sovereign, is not bound by such State statutes as the Uniform Commercial Code. See Burnet v. Harmel, 287 U.S. 103, 110 (1932); Texas Learning Technology Group v. Commissioner, 96 T.C. 686, 693 (1991), affd. 958 F.2d 122 (5th Cir. 1992). * * * [T]he only way income tax liabilities can be settled or compromised is by

(continued...)

I dispute your claim of contract under 15 USC 1692g.[6] Thus, although Ms. Busche implicitly contended that her 2008 liability should be considered "discharged" because of her rights to a secret trust fund, she did not, in her initial request for a CDP hearing, challenge the correctness of the tax liability that she had reported on her tax return, and she did not propose any specifics for an installment agreement or other collection alternative.

Upon receipt of Ms. Busche's request for a CDP hearing, the IRS's Office of Appeals sent her an introductory letter dated April 15, 2010, explaining (among other things) that such hearings take place "by: (1) telephone, (2) mail, and/or (3) personal interviews.  If you prefer your hearing to be a

---

5(...continued)
following the procedures set forth in the Internal Revenue Code and the regulations thereunder. * * *

Bear v. Commissioner, T.C. Memo. 1992-690, 64 T.C.M. (CCH) 1430, 1432 (1992), affd. without published opinion 19 F.3d 26 (9th Cir. 1994).

[6]What Ms. Busche cited is a provision in Title 15 of the United States Code, Chapter 41 ("Consumer Credit Protection"), Subchapter V ("Debt Collection Practices").  15 U.S.C. sec. 1692g (2006) ("Validation of Debts") imposes various requirements on a "debt collector", and Ms. Busche appears to have assumed that the IRS is a "debt collector" for this purpose.  That is not so.  See id. sec. 1692a(6) ("The term 'debt collector' * * * does not include * * * (C) any officer or employee of the United States * * * to the extent that collecting or attempting to collect any debt is in the performance of his official duties").

face-to-face conference at the Appeals Office closest to your residence/business address, please let us know immediately".

On April 26, 2010, Ms. Busche promptly sent a letter "demand[ing] a face-to-face conference".

<u>Appeals' requests for information, and Ms. Busche's responses</u>

The Appeals Office replied by letter of April 27, 2010, in which it scheduled a telephone conference, <u>not</u> a face-to-face conference, for June 3, 2010--i.e., more than 5 weeks after the date of Appeals' letter.  Appeals' letter explained:

> <u>I have determined that an issue raised in your hearing request is</u>:
>
>     1.   a "specified frivolous position", identified by
>          the IRS in Notice 2008-14[7] * * *; or
>
>     2.   a reason that is not a "specified frivolous
>          position," but is a frivolous reason reflecting a
>          desire to delay or impede Federal tax
>          administration; or
>
>     3.   a moral, religious, political, constitutional,
>          conscientious, or similar objection to the
>          imposition or payment of Federal taxes that
>          reflects a desire to delay or impede the
>          administration of Federal tax laws[.]

---

[7]Ms. Busche's Form 56 contention quoted above (see text notes 4-6 above), was not explicitly listed in Notice 2008-14, 2008-4 I.R.B. 310 (Jan. 28, 2008) (but is listed as frivolous in the superseding Notice 2010-33, sec. III(20) and (21), 2010-17 I.R.B. 609).  However, because Ms. Busche later disclaimed her frivolous contention and Appeals did proceed to review her levy notice in a CDP hearing, we need not determine whether the "boilerplate", see <u>Thornberry v. Commissioner</u>, 136 T.C. 356, 358-359 (2011), in Appeals' letter of April 27, 2010, would have been sufficient to warrant non-consideration of Ms. Busche's request for a CDP hearing.

Please be advised that Appeals does not provide a face-to-face conference if the issues you wish to discuss include frivolous issues or issues that Appeals considers as reflecting a desire to delay or impede the administration of Federal tax laws.

**You will be allowed a face-to-face conference on any legitimate issue you raised if you withdraw <u>in writing within 30 days from the date of this letter</u>, the frivolous issues or issues reflecting a desire to delay or impede the administration of Federal tax laws.**

 \*  \*  \*  \*  \*  \*  \*

To be allowed a face-to-face conference about collection alternatives, you must also have filed all required returns and provided all information requested in this letter.

 \*  \*  \*  \*  \*  \*  \*

For me to consider alternative collection methods such as an installment agreement or offer in compromise, you must provide any items listed below. In addition, you must have filed all Federal tax returns required to be filed.

The items to be provided are:

- **<u>Proof of filing tax return(s) for the following applicable periods</u>**. \* \* \*
  Type of Tax: **<u>Form 1040, U.S. Individual income Tax Return</u>**
  Period or Periods: **<u>2009</u>**

- **<u>Specific proposed installment agreement payment amount and payment date</u>** for consideration.

 \*  \*  \*  \*  \*  \*  \*

Please send me the items listed or checked above by May 11, 2010. I cannot consider collection alternatives at your conference nor can I consider alternatives during the hearing process without the information requested above. I am enclosing the applicable forms and a return envelope for your convenience.

Ms. Busche responded by letter dated May 5, 2010, which again made no challenge to her self-reported tax liability for 2008 and stated:

> I wish to withdraw any frivolous or desire-to-delay issues, so that I will be allowed a face-to-face conference.
>
>     *       *       *       *       *       *       *
>
> I still demand a face-to-face conference at the INTERNAL REVENUE SERVICE, ASHEVILLE, NORTH CAROLINA office.  I do not agree to a CDP Hearing by telephone or by mail.

Ms. Busche did not provide, with this repeated demand, the information that Appeals had requested in its letter of April 27, 2010.

Appeals' second request for information

Appeals therefore replied by letter dated May 13, 2010, which stated:

> This is in response to your letter dated May 5, 2010 where you withdrew any frivolous or desire to delay issues.  As the letter dated April 27, 2010 stated, to allow a face-to-face conference about collection alternatives you must also have filed all required returns and provided all information requested in that letter.  Based on the information available to us, you have filed your 2009 tax return with a balance due.  However, you did not provide the other information requested.
>
> The items to be provided are:
>
> - Your **specific proposed collection alternative** for consideration.
>
>     *       *       *       *       *       *       *
>
> - If an Installment Agreement is your proposed collection alternative, please provide your **specific proposed installment agreement payment amount and payment date**.

- **Proof of withholding paying compliance**: Please provide proof of filing a corrected Form W-4, Employee's Withholding Allowance Certificate, with your employer to ensue the correct Federal income tax is withheld from your pay.[8]

    \*       \*       \*       \*       \*       \*       \*

Please send me the items listed or checked above by May 25, 2010. Collection alternatives cannot be considered without the information requested above nor can the face-to-face hearing be granted. If all of the information is not provided by May 25, 2010, the telephone conference will remain as scheduled on June 3, 2010 at 10:00 am. Central Daylight Time. Please call me for the conference.

If you do not participate in the conference or respond to this letter, the determination and/or decision letter that we issue will be based on your hearing request, any information you previously provided to this office about the applicable tax periods, and the Service's administrative file and records.

Ms. Busche's responses

Ms. Busche did not provide the specifics of her collection alternative. Rather, on May 25, 2010 (the date by which Appeals had asked for the information), Ms. Busche sent another letter, which stated:

Thank you for your letter dated May 13, 2010 and postmarked May 17, 2010. I received your correspondence on May 20, 2010.

Because of the short suspense, three (3) working days, I am unable to respond to your letter in the time you have given me. Three (3) working days is an unreasonably short amount of time to respond considering the seriousness of this

---

[8]This request for information about withholding of taxes from Ms. Busche's wages was not included in Appeals' prior request for information and was presumably prompted by Appeals' discovery that her recent 2009 return (like her 2008 return at issue) reported taxes due but not withheld.

matter. Your actions with the short suspense is causing undue delays, because I have to respond to each of your correspondences. Furthermore you keep changing the rules for a face-to-face hearing. Your rule changing is confusing, causing more delays as I try to figure out your intent. Due to your above listed actions, I must now demand no tricks and no lies.

I request an extension of time until June 25, 2010 to respond to your letter dated May 13, 2010. I do not agree to a June 3, 2010 telephonic hearing date. I only agree to a mutually agreed upon face-to-face hearing at a mutually agreed upon date, time, and location.

I have a very busy schedule and want to devote the proper time to this matter. I have to do some research which will take me some time.

The letter made no challenge to Ms. Busche's self-reported tax liability for 2008.

On June 3, 2010 (the date Appeals had appointed for the telephone conference), Ms. Busche did not call Appeals as directed in the April 27, 2010, letter. Instead, Ms. Busche sent Appeals another copy of her May 25 letter and requested a response. She did not challenge in that letter her self-reported tax liability for 2008, and she did not provide with that letter the specifics of her proposed collection alternative.

On June 16, 2010, Ms. Busche sent Appeals another letter, again purporting to respond to Appeals's letter of May 13, 2010, and making demands for information from the IRS:

[T]his letter is my final response to your May 13, 2010 letter.

It is not my intent to bring up frivolous issues, however the courts have determined that I cannot rely on IRS agents/personnel to provide accurate information, therefore

> I am now requesting copies of the law that requires me to go along with your prerequisites for a face to face hearing. It is my understanding that there are no requirements for a face to face hearing, except for me asking for a face to face hearing. I believe there is no evidence to the contrary. I am now repeating my request for a face to face hearing. This is my 3rd request for a face to face hearing.
>
> In the spirit of cooperation, and wanting to resolve this matter in an expedient way, I am providing information that you requested in your letter dated May 13, 2010:
>
> * specific proposed collection alternative and specific proposed installment agreement payment amount and payment date has already been established on June 5, 2009 with registered mail number RA513114084US and was received by INTERNAL REVENUE SERVICE on June 11, 2009.
>
> * If an Offer in Compromise is your proposed collection alternative... This bullet point does not apply in this situation.
>
> Your criteria has been met, now please provide me with a proposed date and time for a face-to-face hearing at the Asheville, North Carolina office. Upon receipt of your reply letter, I will confirm or propose an alternate date and time for a face-to-face hearing at the Asheville, North Carolina office.

No letter of June 5, 2009, was attached to Ms. Busche's letter of June 16, 2011; and no letter of June 5, 2009, appears in the record of this case (despite the Court's invitation to Ms. Busche, described below). The transcript for Ms. Busche's 2008 income tax account shows that she made no payments in June 2009 (or at any other time) that could have been in conjunction with a proposal of an installment agreement.

Thus, as of the time of Ms. Busche's "final response" to Appeals, she had not provided the specifics of a proposed

installment agreement or any other collection alternative, nor had she provided information about her compliance with tax withholding requirements, nor had she made any challenge to her self-reported tax liability for 2008.

Appeals' determination to proceed with collection

On June 18, 2010, the Office of Appeals issued to Ms. Busche its "Notice of Determination Concerning Collection Action(s) under Section 6320 and/or 6330", which stated in part:

> The Appeals office has determined that the Notice of Intent to Levy was appropriately issued based on applicable laws and procedures.  We could not reach an agreement, extend any relief to you, or even consider alternatives to the levy, because after you requested an appeal and a hearing was offered, you did not fully cooperate with us.  The Appeals office fully sustains the Compliance office proposed levy action. * * *

An attachment to the notice of determination stated in part:

> ### BRIEF BACKGROUND
>
> The CDP notice was for the unpaid income tax liability for your 2008 Form 1040, U.S. Individual income Tax Return.  A review of the account transcript indicates that the self-assessed tax return was filed by you and reflected a balance due at the time of filing due to insufficient withholdings, untimely paying, penalties, and interest. * * *
>
>      *      *      *      *      *      *      *
>
> Currently, the IRS has no record of receiving the financial data requested in the letters dated April 27, 2010 and May 13, 2010. * * *
>
>      *      *      *      *      *      *      *
>
> The letters had requested proof of withholding paying compliance and proof of 2009 Form 1040 filing compliance. * * *  For an installment agreement, the letter [of April 27, 2010] requested your specific proposed installment

agreement payment amount and payment date for consideration and the completed Form 433-A[9] with supporting documentation attachments.   * * *

\*        \*        \*        \*        \*        \*        \*

As of today, you have not provided proof of paying compliance, or the financial data needed for any collection alternative or to provide a face-to-face hearing. Therefore, the Appeals office is issuing the determination that the Notice of Intent to Levy was appropriately issued for the applicable tax period.  The proposed levy action is sustained in full.

\*        \*        \*        \*        \*        \*        \*

### Verification of Legal and Procedural Requirements

The requirements of applicable law or administrative procedures have been met and actions taken were appropriate under the circumstances.

- Assessment was made on the applicable 2008 Form 1040 CDP notice period based on the return you filed, per IRC § 6201, and the notices and demand for payment letters were mailed to your last known address, within 60 days of the assessment, as required by IRC § 6303.  This information was verified from the account transcripts.

- There was a balance due when the CDP notice was issued per IRC § 6330 and § 6331(a).  There is presently an amount due and owing.

- IRC § 6330(a) imposes the requirement that a taxpayer be given an opportunity for hearing

---

[9]Ms. Busche's request for a CDP hearing had indicated an interest in both an installment agreement and an offer-in-compromise.  The request for Form 433-A, "Collection Information Statement for Wage Earners and Self-Employed Individuals", in Appeals' letter of April 27, 2010, was made in conjunction with its discussion of an offer-in-compromise, and not specifically with reference to an installment agreement.  For purposes of this opinion we therefore overlook Ms. Busche's failure to provide Form 433-A.

before the Internal Revenue Service can levy on the taxpayer's property.

- Per review of computer transcript, the CDP Notice of Intent to Levy and Notice of Your Right to a Hearing was sent by Certified Mail, Return Receipt Requested, to your last known address, which was also the address indicated on the CDP hearing request.

- The timely received request for CDP Appeal was verified. Per review of the computer transcript, the levy action has been suspended by the appropriate computer condition codes for the tax period at issue.

- There is no offer in compromise or installment agreement pending or currently in effect. There is also no pending innocent spouse request.

- There is no pending bankruptcy case, nor did you have a pending bankruptcy case at the time the CDP notice was sent (11 U.S.C. § 362(a)(6)).

- This Appeals employee has had no prior involvement with this taxpayer concerning the applicable tax periods before this CDP case.

\*　　\*　　\*　　\*　　\*　　\*　　\*

On the Form 12153, you did not challenge the existence or the amount of the self-assessed income tax liability.

Tax Court proceedings

On July 14, 2010, Ms. Busche filed a timely petition pursuant to section 6330(d)(1), appealing the collection determination and asking this Court to review it. Her petition argues at length that she was wrongly denied a face-to-face hearing before the Office of Appeals.

On August 18, 2011, the IRS moved for summary judgment. By order served August 26, 2011, the Court ordered Ms. Busche to

file and serve a response and explained her responsibility as a non-movant responding to such a motion. On September 9, 2011, she filed a response. By order served September 28, 2011, the Court pointed out an apparent gap in Ms. Busche's opposition and ordered that she be permitted to file a supplemental response, which she then did on October 12, 2011.

## Discussion

I. Applicable legal principles

A. Summary judgment standards

Where the pertinent facts are not in dispute, a party may move for summary judgment to expedite the litigation and avoid an unnecessary (and potentially expensive) trial. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Summary judgment may be granted where there is no genuine issue as to any material fact and a decision may be rendered as a matter of law. Rule 121(a) and (b); see Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); Zaentz v. Commissioner, 90 T.C. 753, 754 (1988). The party moving for summary judgment (here, the IRS) bears the burden of showing that there is no genuine issue as to any material fact, and factual inferences will be drawn in the manner most favorable to the party opposing summary judgment (here, Ms. Busche). Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985); Jacklin v. Commissioner, 79 T.C. 340, 344 (1982). However, Rule 121(d) provides:

> When a motion for summary judgment is made and
> supported as provided in this Rule, an adverse party
> may not rest upon the mere allegations or denials of
> such party's pleading, but such party's response, by
> affidavits or as otherwise provided in this Rule, must
> set forth specific facts showing that there is a
> genuine issue for trial. * * *

In compliance with Rule 121(b), the IRS made and supported a showing of the facts of the case, and it was incumbent on Ms. Busche to "set forth specific facts", supported by affidavits or otherwise, to contradict the IRS's showing.

B.    Collection review procedure

When a taxpayer fails to pay any Federal tax liability within 10 days of notice and demand, the IRS may collect the unpaid tax by levy on the taxpayer's property, pursuant to section 6331.  However, before the IRS may proceed with that levy, the taxpayer is entitled to administrative and judicial review pursuant to section 6330.  Administrative review is carried out by way of a hearing before the Office of Appeals pursuant to section 6330(b) and (c); and, if the taxpayer is dissatisfied with the outcome there, she can appeal that determination to the Tax Court under section 6330(d), as Ms. Busche has done.

For the CDP hearing before the Office of Appeals, the pertinent procedures are set forth in section 6330(c).

First, the IRS's Appeals officer must obtain verification from the Secretary that the requirements of any applicable law or

administrative procedure have been met.  Sec. 6330(c)(1).  In the case of a levy to collect a self-reported tax liability, the basic requirements, see sec. 6331(a), (d), for which Appeals must obtain verification are:  the IRS's timely assessment of the liability, secs. 6201(a)(1), 6501(a); the giving to the taxpayer of notice and demand for payment of the liability, sec. 6303; and the giving to the taxpayer of notice of intention to levy and of the taxpayer's right to a hearing, secs. 6330(a), 6331(d).  (We discuss below Ms. Busche's 11th-hour attempt to raise a "verification" issue.)

Second, the taxpayer may "raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy", including challenges to the appropriateness of the collection action and offers of collection alternatives.  Sec. 6330(c)(2)(A). Ms. Busche's principal contention--that she should have gotten a face-to-face hearing for consideration of an installment agreement--pertains to that second set of issues, i.e., offers of collection alternatives, and we discuss this issue below.

Additionally, the taxpayer may contest the existence and amount of the underlying tax liability if she did not receive a notice of deficiency and "did not otherwise have an opportunity to dispute such tax liability."  Sec. 6330(c)(2)(B).  The liability at issue here is that which Ms. Busche self-reported on her 2008 tax return, so she did not receive a notice of

deficiency and did not have a prior opportunity to make such a dispute. (We discuss below her failure to raise such a dispute before the Office of Appeals.)

When the Office of Appeals issues its determination, the taxpayer may "appeal such determination to the Tax Court", pursuant to section 6330(d)(1), as Ms. Busche has done. In such an appeal, we review de novo any determination of the Office of Appeals as to the underlying liability that is properly at issue; and as to collection matters, we review the determination of the Office of Appeals for abuse of discretion--that is, we decide whether the determination was arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), affd. 469 F.3d 27 (1st Cir. 2006); Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176 (2000).

II. Ms. Busche's arguments

In Ms. Busche's opposition to the IRS's motion for summary judgment, we discern four arguments that we now address.

A.   Verification

In her supplemental opposition to the IRS's motion, Ms. Busche raises for the first time the issue of "verification". The totality of her contention is as follows:

> The respondent has not verified that the requirements of any applicable law or administrative procedure were met. I have no evidence to the contrary, and have yet to see evidence to the contrary from the Respondent.

As we explained above, the Office of Appeals is required by statute to "obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met". Sec. 6330(c)(1). A taxpayer may challenge that verification in an appeal to this Court whether or not he raised verification before the Office of Appeals. See Hoyle v. Commissioner, 131 T.C. 197 (2008). However, Ms. Busche's verification challenge is unavailing, for three reasons.

### 1. Omission from Ms. Busche's petition

A petition commencing a CDP case in this Court must contain--

> Clear and concise assignments of each and every error which the petitioner alleges to have been committed in the notice of determination. Any issue not raised in the assignments of error shall be deemed to be conceded.

Rule 331(b)(4). Ms. Busche's petition did not raise lack of verification as an assignment of error, and she therefore conceded lack of verification.

However, even if we take note of Ms. Busche's self-represented status and construe her pleadings broadly, the outcome does not change, as we now show.

### 2. Lack of "reasons for the amendment"

If we were to find in Ms. Busche's opposition to the IRS's motion for summary judgment a latent or implicit motion to amend her petition to raise the issue of verification, we would then address that motion to amend under the standards of Rule 41(a):

> a party may amend a pleading only by leave of Court or by written consent of the adverse party, and leave shall be given freely <u>when justice so requires</u>.  No amendment shall be allowed after expiration of the time for filing the petition, however, which would involve conferring jurisdiction on the Court over a matter which otherwise would not come within its jurisdiction under the petition as then on file.  A motion for leave to amend a pleading <u>shall state the reasons for the amendment</u> * * *.  [Emphasis added.]

Ms. Busche states <u>no</u> reasons for an amendment, and it is therefore not possible to conclude that "justice * * * requires" an amendment.

On the contrary, apart from Ms. Busche's general statement in her brief that "respondent has not verified", the record before us contains nothing to suggest anything other than that verification was indeed duly obtained:  Appeals' notice of determination gives a detailed account of verification of all the basic requirements, and Ms. Busche's IRS transcript (i.e., a Form 4340, "Certificate of Assessments, Payments, and Other Specified Matters") that was submitted with the IRS's motion for summary judgment confirms that those requirements were met.  Ms. Busche suggests no particular defect in that verification, and a motion to amend her petition would be denied.

3.  <u>Lack of "specific facts" to dispute verification</u>

Even if verification were deemed to be properly pleaded in this case, the IRS would still be entitled to summary judgment on the point.  The IRS's motion made and supported a showing of verification; and under Rule 121 it was therefore incumbent on

Ms. Busche "not [to] rest upon the mere allegations or denials of such party's pleading" but rather to "set forth specific facts showing that there is a genuine issue for trial." (Emphasis added.) This obligation was not hidden from Ms. Busche. Rather, in view of Ms. Busche's self-represented status, the Court stated in its order dated August 24, 2011--

> If Ms. Busche disagrees with the facts set out in the IRS's motion, then Ms. Busche's response should point out the specific facts in dispute. The response should support Ms. Busche's version of the facts by attaching relevant documents and/or by attaching one or more affidavits (i.e., written statements that are signed and sworn before a notary) or unsworn declarations that are made "under penalty of perjury" (see 28 U.S.C. sec. 1746). If Ms. Busche disagrees with the IRS's argument as to the law, then her response should also set out her position on the disputed legal issues.
>
> Ms. Busche's attention is directed to Tax Court Rule 121 (available on the court's website at www.ustaxcourt.gov), which sets out the principles for filing, opposing, and resolving motions for summary judgment. * * *

Notwithstanding this tutorial on summary judgment, Ms. Busche made only the most general contention--"respondent has not verified that the requirements of any applicable law or administrative procedure were met"--and neither stated nor supported the "specific facts" that Rule 121 requires. The IRS is therefore entitled to summary judgment on the matter of verification under section 6330(c)(1).

B.    <u>Face-to-face hearing</u>

Ms. Busche's principal argument is that she was wrongly deprived of a face-to-face CDP hearing before Appeals, and she appears to contend in effect that she had an absolute right to such a hearing (rather than the telephone hearing she was offered) without regard to anything that she might have done or failed to do.  As she stated in her opposition to the IRS's motion, "It is my understanding that there are no requirements for a face-to-face hearing, except for me asking for a face-to-face hearing."  If Ms. Busche were right, then a taxpayer would have the unilateral power to delay collection of tax until after a face-to-face hearing, even if she had nothing to say or propose once the hearing took place.

In fact, a taxpayer does not have an absolute right to a face-to-face hearing.  Section 6330(b)(1) provides simply that a "hearing shall be held" by Appeals, and the statute does not prescribe the nature of that "hearing".  As we have previously observed:

> Hearings at the Appeals level have historically been conducted in an informal setting.  * * *  When Congress enacted section 6330 * * *, Congress was fully aware of the existing nature and function of Appeals.  Nothing in section 6330 or the legislative history suggests that Congress intended to alter the nature of an Appeals hearing * * *.

<u>Davis v. Commissioner</u>, 115 T.C. 35, 41 (2000).  The regulations implementing the CDP process provide as follows:

CDP hearings are * * * informal in nature and do not require the Appeals officer or employee and the taxpayer, or the taxpayer's representative, to hold a face-to-face meeting. A CDP hearing may, but is not required to, consist of a face-to-face meeting, one or more written or oral communications between an Appeals officer or employee and the taxpayer or the taxpayer's representative, or some combination thereof. * * *

  *      *      *      *      *      *      *

[A] taxpayer who presents in the CDP hearing request relevant, <u>non-frivolous</u> reasons for disagreement with the proposed levy will ordinarily be offered an opportunity for a face-to-face conference at the Appeals office closest to taxpayer's residence. * * *

  *      *      *      *      *      *      *

A face-to-face CDP conference concerning a collection alternative, <u>such as an installment agreement</u> or an offer to compromise liability, will not be granted unless other taxpayers would be eligible for the alternative in similar circumstances. * * *  In all cases, a taxpayer will be given an opportunity to <u>demonstrate eligibility</u> for a collection alternative and to become eligible for a collection alternative, in order to obtain a face-to-face conference. * * *

Sec. 301.6330-1(d)(2), Q&A-D6 through -D8, Proced. & Admin. Regs. (26 C.F.R.) (emphasis added).

We therefore address the question of whether Ms. Busche was entitled to a face-to-face hearing under this standard, and we find that she was not.  Her request for a CDP hearing asserted a frivolous issue (i.e., the secret trust fund invoked by Form 56), which certainly did not entitle her to a face-to-face hearing. After she withdrew that frivolous argument, no concrete issue or proposal remained to flesh out her CDP hearing request, and her reasserted "demand" for a face-to-face hearing lacked any

justification at all.  Despite explicit requests by the IRS, she failed to provide a specific proposal for an installment agreement and failed to provide information that she was eligible for such an agreement (i.e., information that she was in compliance as to withholding of tax from her wages).  On that record, there was nothing to be discussed at a face-to-face hearing, so the IRS sensibly declined to schedule one.

Ms. Busche alleged, in her response to the IRS's motion, that she had "provided the requested financial data" to Appeals. To support that allegation, she cited a document (her letter of June 16, 2010) that in turn cites another document (a supposed letter of June 5, 2009) that the Court thought might implicate a genuine issue of material fact as to whether Ms. Busche might have made a specific proposal for an installment agreement. (According to the letter of June 16, 2010, the alleged letter of June 5, 2009, provided a "specific proposed installment agreement payment amount and payment date".)  However, no letter dated June 5, 2009, was attached to her response.  Because such a letter, if it had been sent, might have been material to Ms. Busche's case, the Court issued its order of September 28, 2011, which stated:

> Petitioner's response includes an "Attachment A" that
> includes a letter dated June 16, 2010.  That letter refers
> to a proposal dated June 5, 2009 (received by the IRS June
> 11, 2009), which proposal is not included with petitioner's
> response.  (The June 16, 2010, letter also refers to other

correspondence, as does a letter of June 28, 2010, that is included in Petitioner's "Attachment B".)

In a reply filed September 27, 2011, the IRS asserts (at 9) that its administrative file does not include a copy of the alleged proposal of June 5, 2009.

Ms. Busche should carefully review the IRS's motion papers (including its reply) and note its assertions about what Ms. Busche did and did not submit to IRS Appeals during her collection due process hearing. Ms. Busche's obligation in opposing the IRS's motion is to "set forth specific facts showing that there is a genuine issue for trial". (Rule 121(d).) Her presentation may fall short if she fails to submit the documents she relies on. To enable her to include in our court record any documents that she relies on but that are not yet in our record, it is

ORDERED that, no later than October 12, 2011, petitioner Cynthia Busche may, if she wishes, file a supplement to her response to the IRS's motion in which she may include any documents, not yet submitted, on which she intends to rely to oppose the IRS's motion (including, if she wishes, her proposal of June 5, 2009).

Ms. Busche did file a supplement to her response, but that supplement makes no mention of, and did not attach, a letter of June 5, 2009, or any other document.

Consequently, as our record now stands, Ms. Busche still has not--despite the Court's explicit invitation--described specific installment agreement terms that she claims to have proposed to Appeals during her CDP hearing. She has implicitly alleged that she proposed such terms to other IRS personnel in June 2009, but has not actually made a showing that she did so at any time. The IRS has asserted, and its record shows, that Ms. Busche did not propose specific terms. Under Rule 121, Ms. Busche was, again, obliged "not [to] rest upon the mere allegations or denials of

such party's pleading" but rather to "set forth <u>specific facts</u> showing that there is a genuine issue for trial."  (Emphasis added.)  Since she did not do so, we conclude for purposes of the IRS's motion that Ms. Busche did not propose installment agreement terms to Appeals and was therefore not entitled to a face-to-face hearing to discuss an installment agreement that she did not propose.

Where a taxpayer proposes a collection alternative such as an installment agreement, the hearing (whether face-to-face or by telephone) is a means for Appeals to consider the proposal. Where denial of a face-to-face hearing would impede adequate consideration of a collection alternative, then that denial might itself be an abuse of discretion.  However, the ultimate question is not whether a face-to-face hearing was held but whether Appeals abused its discretion by not agreeing to a collection alternative.  That is not how Ms. Busche frames the issue, but that is in fact the real issue.  We find that Appeals did not abuse its discretion, for two reasons that are obvious in what we have already said:

First, it was not an abuse of discretion for Appeals to reject collection alternatives when Ms. Busche had proposed none. See <u>Cavazos v. Commissioner</u>, T.C. Memo. 2008-257 (citing <u>Kendricks v. Commissioner</u>, 124 T.C. 69, 79 (2005)); see also <u>Nelson v. Commissioner</u>, T.C. Memo. 2009-108 (Appeals did not

abuse its discretion in sustaining a lien when a taxpayer requested an OIC generally but had not prepared one).

Second, it was not an abuse of discretion for Appeals to consider Ms. Busche ineligible for an installment agreement on the ground of her failure to show compliance with current withholding obligations. See Giamelli v. Commissioner, 129 T.C. 107, 111-112 (2007). It appears that for the year at issue (2008) Ms. Busche's liability was underpaid because her income tax withholding was inadequate. When during the CDP process Appeals obtained her return for the next year (2009), it saw that her self-reported liability was again underpaid because of inadequate withholding. Lest Ms. Busche continue to fall further and further behind, Appeals had a legitimate interest in assuring that her withholding be adequate on a going-forward basis. Ms. Busche failed to provide the information that could grant that assurance and thereby rendered herself ineligible for an installment agreement. Appeals did not abuse its discretion in declining to enter into an installment agreement with her.

C. Underlying liability

In her supplemental opposition to the IRS's motion, Ms. Busche raises for the first time the issue of her underlying liability for the tax that is the subject of the proposed levy. The totality of her contention is as follows:

> Since Petitioner was not granted the requested face to face collection due process hearing (CDPH). [Sic.] Petitioner

> was not give a chance to dispute the Respondents alleged 2008 tax liability.  Therefore, since a Notice of Determination was mailed, the Petitioner's only option thereafter was to request the Tax Court hearing, to enforce Petitioner's rights to a face to face CDPH.  There is no law which requires the Petitioner to challenge the existence or the amount of the self-assessed income tax liability prior to a face to face CDPH. * * *

On the contrary, the regulations implementing the CDP process provide:  "A face-to-face conference need not be granted if the taxpayer does not provide the required information set forth in A-C1(ii)(E) of paragraph (c)(2)", sec. 301.6330-1(d)(2), Q&A-D8, Proced. & Admin. Regs. (26 C.F.R.), and the cross-referenced provision requires that the taxpayer must state "The reason or reasons why the taxpayer disagrees with the proposed levy", id. par. (c)(2), Q&A-C1(ii)(E).

A CDP petitioner may certainly dispute even a liability that she self-reported on her own return, see Montgomery v. Commissioner, 122 T.C. 1, 8-9 (2004); but Appeals can hardly be expected to intuit that the taxpayer might now disagree with herself.  Rather, the taxpayer must raise with Appeals the issue of underlying liability.  Under the regime described in the regulations, a face-to-face hearing may be granted only upon a showing that there is something to be accomplished at a face-to-face hearing.  The regulation requires that, before a hearing will be granted, the taxpayer must state the "reasons" she disagrees with the levy (which reasons might include a contention that she does not owe the tax).  A taxpayer may not hide her

contentions, demand a face-to-face hearing without justification,
and then disclose her contentions only if and after the IRS
capitulates to her demand.

Consistent with the regulation, the Office of Appeals
informed Ms. Busche in its letter of April 27, 2011:

> To be allowed a face-to-face conference about collection
> alternatives, you must also have filed all required returns
> and provided all information requested in this letter.

> During the hearing, I must consider * * * [verification,
> collection alternatives, "[c]hallenges to the
> appropriateness of collection action", and spousal
> defenses].

>      *     *     *     *     *     *     *

> - <u>We may also consider whether you owe the amount
>   due</u>, but only if you did not receive a statutory
>   notice of deficiency or have not otherwise had an
>   opportunity to dispute your liability with
>   Appeals.

>      *     *     *     *     *     *     *

> If you do not participate in the conference or respond to
> this letter, the determination and/or decision letter that
> we issue will be based on your hearing request, any
> information you previously provided to this office about the
> applicable tax periods, and the Service's administrative
> file and records.

None of Ms. Busche's submissions to Appeals challenged the
liability. She failed to justify a face-to-face hearing and
refused to participate in a telephone hearing. Appeals therefore
based its determination on the information available to it, which
did not include any challenge to underlying liability. We

therefore now review a determination that did not address and could not have addressed underlying liability.

As we explained in <u>Giamelli v. Commissioner</u>, 129 T.C. at 112-113:

> Section 6330(c)(2)(B) permits a taxpayer to "raise at the hearing challenges to the existence or amount of the underlying tax liability" under certain circumstances.  The statute [i.e., section 6330(c)(3)] contemplates consideration of issues "raised" by the taxpayer at the hearing.  Thus, if an issue is never raised at the hearing, it cannot be a part of the Appeals officer's determination * * *

--and our jurisdiction under section 6330(d)(1) to review a "determination" does not extend to issues that were not so raised and that are therefore outside any such determination. Underlying liability is therefore not properly before us in this case.

Moreover, as with the issue of verification, see <u>supra</u> part II.A, Ms. Busche's challenge of underlying liability would fail for the additional reasons (1) that she did not plead in her petition that her liability is less than was assumed in the proposed levy (and she provides no warrant for allowing an amendment to her petition to add such a contention) and (2) that in opposing the IRS's motion for summary judgment, she did not assert or support "specific facts" to show a lesser liability. We therefore do not entertain her vague assertion about an unelaborated dispute as to her 2008 income tax liability.

D.    The IRS's supposed failure to provide information

In Ms. Busche's "final response" letter to Appeals, she stated:  "I am now requesting copies of the law that requires me to go along with your prerequisites for a face to face hearing." In her supplemental response to the IRS's motion, she argues: "If Petitioner is required to respond to any and all letters from respondent in a timely fashion then Respondent is required to do likewise"; and since Appeals did not give her the requested copies, she argues that its determination was therefore "premature" (so that, she says, we should deny the IRS's motion for summary judgment).  We assume, for purposes of the IRS's motion, that there could be circumstances in which Appeals' failure to answer questions could disable a taxpayer from participating meaningfully in the CDP process, so that the notice of determination might reflect an abuse of discretion.  However, that is not the case here.

Ms. Busche in effect posits a symmetry between Appeals and the taxpayer ("If Petitioner is required * * * then Respondent is required")--a symmetry that the law does not actually provide.  A CDP petitioner is, by definition, a taxpayer with an assessed liability who has received a notice and demand, has not paid the liability, and has been served with a collection notice.  The IRS, on the other hand, is the agency authorized and required by law to collect that liability.  By filing a CDP hearing request,

the taxpayer asks Appeals to interrupt that collection process; and to evaluate such a request, Appeals needs information that it can most reasonably get from the taxpayer.  Given that dynamic, the system imposes on the taxpayer certain burdens that she must meet in order to justify the interruption of collection activity that she has requested.  The IRS is not without burdens of its own, but the IRS's burdens are those imposed on it by statute, as discussed above, not additional burdens imposed by the taxpayer. The CDP taxpayer does not have the prerogative to add to the IRS's obligations and to suspend the CDP process (and thereby to suspend collection of tax) until the IRS has satisfied her demands.  Rather, the taxpayer has the rights conferred on her by statute; the IRS has the duties imposed on it by statute; and the Tax Court will enforce those rights and duties by applying the statutes and the regulations promulgated thereunder.  We hold that, in deciding whether Ms. Busche qualified for a face-to-face hearing, the IRS was not obliged to cite chapter and verse to Ms. Busche.

## Conclusion

On the record before us, we cannot hold that the decision of the Office of Appeals to sustain the proposed levy was arbitrary, capricious, or without sound basis in fact or law.  As a result, we conclude that the Office of Appeals did not abuse its

discretion, and we hold that respondent is entitled to the entry of a decision sustaining the determination as a matter of law.

To reflect the foregoing,

<u>An appropriate order and decision will be entered</u>.